Argued and submitted April 19, reversed and remanded; motion for sanctions denied
June 5, 1991

Phyllis COULTER,
*Appellant,*

*v.*

CONSTRUCTION AND GENERAL LABORERS
UNION LOCAL 320,
*Respondent,*

*and*

John SUTHERLAND,
*Defendant.*

(A8904-02148; CA A63543)

812 P2d 850

Steven N. Bogdon, Vancouver, Washington, argued the cause for appellant. With him on the briefs was Marsh, Higgins & Foster, Vancouver, Washington.

Thomas W. Brown, Portland, argued the cause for respondent. With him on the brief was Cosgrave, Vergeer & Kester, Portland.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Plaintiff brought this action for wrongful discharge, intentional infliction of emotional distress and employment discrimination. The trial court granted the motion to dismiss by Construction and General Laborers Local 320 (defendant) and entered a judgment in accordance with ORCP 67B. We reverse.

Plaintiff was employed by defendant and was subject to a collective bargaining agreement; she was the sole member of the bargaining unit. The agreement included a grievance procedure culminating in arbitration.[1] Plaintiff worked under the supervision of defendant Sutherland.[2] She alleges that she and Sutherland had engaged in an intimate relationship during which he informed her how he could use his position to influence her employment; that he had ended the relationship and then subsequently asked her to resume intimate relations; that, when she refused, he and defendant's agents created a work atmosphere of hostility and oppression intended to cause her emotional distress, reduced her hours of employment and announced the termination of the agreement; that she terminated her employment because of the reduction of her work hours and in anticipation of the termination of the agreement and because working conditions were intolerable; that she accepted substitute employment, which resulted in lost wages and benefits; and that she has suffered mental stress and depression.

Plaintiff's first assignment of error is that the trial court erred in dismissing her claim for sexual discrimination under ORS 659.030(1). Defendant concedes that it was error to dismiss her statutory claim. *Vaughn v. Pacific Northwest Bell Telephone,* 289 Or 73, 611 P2d 281 (1980). Because of

---

[1] Article XIX provided:

"Section 1.  A grievance within the meaning of this agreement shall be any difference of opinion, controversy or dispute arising between the parties hereto relating to any matter of hours, working conditions and wages, or any dispute between the parties involving interpretation or application of any provision of this agreement.

"Section 2.  An aggrieved employee shall present their [sic] grievance within five (5) working days of its occurrence on the regular grievance form, or such grievance will be deemed waived by the Union and the Employer."

[2] Sutherland is not a party to the appeal.

defendant's concession, plaintiff requests sanctions against defendant. We deny the request. *See Mattiza v. Foster,* 311 Or 1, 803 P2d 723 (1990).

Plaintiff contends that the trial court erred in dismissing her claims for constructive wrongful discharge and intentional infliction of emotional distress. The trial court held that she had not exhausted remedies provided in the collective bargaining agreement. There is no basis in state law to require exhaustion, and the issue is not reached unless plaintiff's state law claims are preempted by section 301 of the Labor Management Relations Act. 29 USC § 185(a). If they are, the agreement provides the exclusive remedies, unless plaintiff is somehow excused from pursuing them.

Section 301 provides, in part:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce * * * may be brought in any district court of the United States having jurisdiction of the parties * * *."

It authorizes federal courts to fashion a body of federal common law to address disputes arising out of labor contracts. *Textile Workers Union v. Lincoln Mills,* 353 US 448, 77 S Ct 912, 1 L Ed 2d 972 (1957). Providing that federal law, not state law, will be used to adjudicate labor claims assures uniformity in labor law. *Teamsters Union v. Lucas Flour Co.,* 369 US 95, 82 S Ct 571, 7 L Ed 2d 593 (1962). The interest in uniformity may preempt a state law claim, even though a party alleges a state tort action instead of a violation of a collective bargaining agreement. *Allis-Chalmers Corp. v. Lueck,* 471 US 202, 105 S Ct 1904, 85 L Ed 2d 206 (1985). However, not every claim which tangentially involves an agreement is preempted. 471 US at 211. The test is whether the resolution of the claim is "substantially dependent upon analysis of the terms of an agreement made between the parties * * *." 471 US at 220.

That test was clarified in *Lingle v. Norge Division, Magic Chef,* 486 US 399, 108 S Ct 1877, 100 L Ed 2d 410 (1988), in which the employee, who was subject to an agreement, had been terminated after she had filed a workers' compensation claim. She filed a state law retaliatory discharge claim, which the defendant removed to federal court

under section 301. The Seventh Circuit Court of Appeals determined that the plaintiff's claim was "inextricably intertwined" with the agreement, because resolution of the claim relied on the same analysis of facts; therefore, the plaintiff's state law claim was preempted. The Supreme Court rejected that conclusion:

> "[W]hile there may be instances in which the National Labor Relations Act pre-empts state law on the basis of the subject matter of the law in question, § 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements. In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 purposes." 486 US at 408. (Footnotes omitted.)

Defendant argues that, in Oregon, section 301 pre-empts claims unless they are based on independent statutory rights. It relies on *Embry v. Pac. Stationery and Printing Co.,* 62 Or App 113, 659 P2d 436 (1983), in which the plaintiff, who was subject to a collective bargaining agreement, had brought a claim for wrongful discharge after he was fired for refusing to submit a false claim for damaged freight. We rejected the plaintiff's position that the employer's reasons for firing had interfered with an important public interest justifying compensation. We held that an employee subject to an agreement must ordinarily use the grievance procedures as the exclusive remedy. 62 Or App at 117.

Our holding in *Embry v. Pac. Stationery and Printing Co., supra,* was derived from the strong federal policy to encourage collective bargaining agreements. However, we agree with plaintiff that the policy at stake is protection of rights that the parties have bargained for and that are dependent on the terms of the agreement. In the light of *Allis-Chalmers Corp. v. Lueck, supra,* and *Lingle v. Norge Division, Magic Chef, supra,* any suggestion in *Embry v. Pac. Stationery and Printing Co., supra,* that a wrongful discharge

claim is automatically preempted by section 301 is not correct.[3] Whether there is preemption must be determined by a case-by-case analysis of whether resolution of the claim depends on the interpretation of the bargaining agreement.

Defendant contends that, even if section 301 does not automatically preempt a common law wrongful discharge claim, plaintiff's claim here is preempted under the analysis of *Lingle v. Norge Division, Magic Chef, supra.* Defendant argues that plaintiff alleged that it reduced her hours and terminated the agreement in order to terminate her employment. Thus, defendant contends, resolution of the claim requires an inquiry into the terms of the agreement to determine the scope of defendant's authority relating to working hours, layoffs and contract termination. Defendant argues that the claim cannot be determined without reference to the rights and obligations in the bargaining agreement, and, therefore, plaintiff's claim is "inextricably intertwined" with the terms of the agreement.

■ However, the agreement may play a role in a claim without necessarily being "inextricably" involved. *See Lingle v. Norge Division, Magic Chef, supra,* 486 US at 413 n 12. Plaintiff's claim is that she was constructively discharged for exercising her right to be free from sexual advances in her employment. *See Holien v. Sears, Roebuck and Co.,* 298 Or 76, 689 P2d 1292 (1984); *Carlson v. Crater Lake Lumber Co.,* 103 Or App 190, 796 P2d 1216 (1990). Clearly, the parties did not, and could not, lawfully bargain that plaintiff would provide sexual favors in return for employment. Even though the means by which defendant allegedly retaliated may implicate the collective bargaining agreement, resolution of plaintiff's claim does not require interpretation of the contract. *See Munsey v. Plumbers Local #51,* 85 Or App 396, 404, 736 P2d 615 (1987). It was error to dismiss the claim.

■ Defendant argues that there was no error in dismissing plaintiff's claim for intentional infliction of emotional distress. Defendant's position is that, under Oregon law, plaintiff must prove that its acts transgressed the bounds of

---

[3] For the same reasons, the same suggestion, by way of *dicta* in a footnote in *Andrews v. May Department Stores,* 96 Or App 305, 310 n 2, 773 P2d 1324, *rev den* 308 Or 465 (1989), is incorrect.

socially tolerable behavior. *See Hall v. The May Dept. Stores,* 292 Or 131, 137, 637 P2d 126 (1981). Proof of that element requires consideration of plaintiff's and defendant's relationship as employee and employer. In the context of that relationship, defendant argues, whether its behavior was reasonable or not cannot be decided without interpreting its rights under the agreement relating to hours, layoffs and contract termination.

Plaintiff concedes that, as a rule, claims for intentional infliction of emotional distress by a discharge have not fared well, because conduct that is expressly allowed by a bargaining agreement, such as discharging an employee, usually is not beyond the bounds of socially tolerable conduct. *See Patton v. J. C. Penney Co.,* 301 Or 117, 124, 719 P2d 854 (1986). Plaintiff argues, however, that a discharge may transgress tolerable bounds if the *reason* for the discharge is sufficiently outrageous, *citing Carlson v. Crater Lake Lumber Co., supra; Madani v. Kendall Ford, Inc.,* 102 Or App 478, 794 P2d 1250, *rev allowed* 310 Or 475 (1990). She contends that her claim is premised on the reasons that caused defendant to exercise its rights under the agreement. She argues that resolution of whether those reasons transgress the bounds of tolerable conduct is not dependent on the terms of the agreement and, thus, that her claim is not preempted.

We agree. Under the agreement, defendant had certain rights to dictate plaintiff's work conditions. However, the parties could not have a contract to permit defendant to exercise its rights if plaintiff refused to engage in sexual relations. Whether that was the reason for defendant's actions and whether that reason was beyond the bounds of tolerable conduct are not questions whose resolutions depend on an interpretation of the agreement.

Plaintiff's claims for wrongful discharge and intentional infliction of emotional distress should not have been dismissed. It follows that it was error to dismiss her claims for punitive damages.[4]

Reversed and remanded; motion for sanctions denied.

---

[4] Because of our disposition of the case, we need not reach plaintiff's remaining assignment of error that she should have been allowed to replead.